T.C. Memo. 2001-115

UNITED STATES TAX COURT

KEVIN D. CASTRO AND MARGARITA C. CASTRO, ET AL.,[1] Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 10785-99, 10794-99,          Filed May 14, 2001.
            10795-99.

<u>Edward G. Marshall</u>, for petitioners.

<u>Fred E. Green, Jr.</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  In separate notices of deficiency,
respondent determined the following income tax deficiencies and

_____

[1]Cases of the following petitioners are consolidated
herewith:  Castro Family Trust, Kevin Castro, Margarita Castro,
Steven Castro, Howie Rossman, Trustees, docket No. 10794-99; and
Castro & Co. Jewelers, Kevin Castro, Margarita Castro, Steven
Castro, Howie Rossman, Trustees, docket No. 10795-99.

penalties with respect to petitioners' Federal income taxes:[2]

Kevin D. Castro and Margarita C. Castro, docket No. 10785-99

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|---------------------------------------|
| 1995 | $16,224 | $3,245 |
| 1996 | 13,863 | 2,773 |

Castro Family Trust, Kevin Castro, Margarita Castro, Steven Castro, Howie Rossman, Trustees, docket No. 10794-99

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|---------------------------------------|
| 1995 | $19,898 | $3,980 |
| 1996 | 12,116 | 2,423 |

Castro & Co. Jewelers, Kevin Castro, Margarita Castro, Steven Castro, Howie Rossman, Trustees, docket No. 10795-99

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|---------------------------------------|
| 1995 | $24,538 | $4,908 |
| 1996 | 20,567 | 4,113 |

Petitioners filed separate petitions to redetermine the proposed deficiencies and related penalties. We consolidated these cases for trial, briefing, and opinion pursuant to Rule 141(a) because they present common issues of fact and law.

---

[2]All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

After concessions,[3] the only issues[4] for decision are:

1) Whether the Castro Family Trust (CFT) and the Castro & Co. Jewelers Trust (CCJT) (collectively referred to as the trusts) should be disregarded for Federal income tax purposes;

2) whether the income and expenses of the jewelry business allegedly owned by the CCJT and operated by Kevin D. Castro during the years at issue must be reported by Kevin D. Castro and Margarita C. Castro (collectively referred to as the Castros);

---

[3]Respondent conceded that, if we hold the trusts are invalid for Federal income tax purposes, the trusts are not liable for the income tax on income properly chargeable to Kevin D. and Margarita C. Castro. The parties acknowledge that the issue of fiduciary fees will be determined in accordance with our holding regarding the validity of the trusts.

At trial, the Castro & Co. Jewelers Trust (CCJT) conceded respondent's adjustment to taxes for 1996. The CCJT also agreed to concede the adjustment to outside services for 1996 if we hold that the CCJT is valid for Federal income tax purposes. If, however, we hold that the CCJT is not valid for Federal income tax purposes, then respondent concedes, for 1996, the adjustment to outside services and an increase in depreciation in the amount of $3,800.

Respondent proposed adjustments to the following items in his notices of deficiency, and petitioners are deemed to have conceded these adjustments because, although petitioners disputed them in their petitions, petitioners failed to address them at trial or on brief: The CCJT's 1995 charitable contribution(s); the Castro Family Trust's (CFT) 1995 and 1996 charitable contributions; and the CFT's 1995 and 1996 "other deductions" and "miscellaneous itemized deductions", including medical, utilities, automobile, meal, travel, and telephone expenses. See Rule 151(e)(4) and (5); Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989); Money v. Commissioner, 89 T.C. 46, 48 (1987).        .

[4]The only other issues are computational.

3) whether Kevin D. Castro (petitioner) is liable for self-employment taxes on the net income generated by the jewelry business during the years at issue;

4) whether petitioners are liable for the accuracy-related penalty for negligence or disregard of rules or regulations pursuant to section 6662 for each of the years at issue; and

5) whether the Castros are liable for a penalty pursuant to section 6673.

FINDINGS OF FACT

I. Background

The parties have stipulated some of the facts, which are incorporated into our findings by this reference. At the time the petitions in these cases were filed, the Castros resided, and the CFT and the CCJT had their principal places of business, in Cedar City, Utah.

In 1983, petitioner became a gemologist. In 1984, petitioner and his brother formed a partnership in California to operate a jewelry business called Castro & Co. (the partnership). In 1992, the partnership closed its jewelry store in California and opened a jewelry store in Cedar City, Utah. The Castros also moved to Cedar City, Utah. For the taxable years 1984 through 1993, petitioner reported his distributive share of partnership income on Schedule E, Supplemental Income and Loss, of his Form 1040, U.S. Individual Income Tax Return. The partnership

operated its jewelry business through 1993 when the partnership terminated.[5]

In or around 1990, a customer of the jewelry business filed a lawsuit against the partnership. The lawsuit was dismissed approximately 18 months later after a 5-day trial.

After the partnership terminated, petitioner operated the jewelry business as a sole proprietorship. Petitioner reported the income and expenses generated by his jewelry business from January 1, 1994, to the date he transferred his jewelry business into trust,[6] on Schedule C, Profit or Loss from Business (Sole Proprietorship), of his Form 1040 for 1994.

## II.  The Establishment and Operation of the Trusts

### A.  The Establishment of the Trusts

In 1994, the Castros decided to place all of their personal and business assets in a tiered trust arrangement. The trusts were established using several steps:

(1)  On or about April 8, 1994, petitioner Margarita C. Castro (Mrs. Castro) executed a bill of sale and a quitclaim deed by which she conveyed to petitioner all of her interests in all

---

[5]The parties stipulated erroneously that the jewelry business was operated as a sole proprietorship during 1993. We disregard this stipulation and find facts consistent with the evidence.

[6]By use of the terms "trust", "trustee", "beneficiary", and other related terms, we intend no implication as to the validity of the trusts involved in these cases.

real and personal property, including the Castros' home and furnishings, in exchange for $20 and other consideration.

(2)  On April 8, 1994, petitioner, as grantor, executed a declaration of trust prepared by Dependable Services Group (DSG) entitled "Castro Family Trust".  In the declaration of trust, petitioner promised to provide lifetime services and to transfer any remuneration paid for those services to the trust.  Part of the consideration petitioner purportedly received in exchange for his transfer of assets to the CFT and his promise to provide lifetime services and any resulting remuneration exclusively for the benefit of the CFT consisted of all 100 units of beneficial interest in the CFT.

(3)  On April 8, 1994, petitioner executed a bill of sale and a quitclaim deed, which recited that petitioner conveyed all of his interest in real and personal property, including his home and furnishings, to the CFT in exchange for $20 and other consideration.

(4)  On May 5, 1994, the CFT, as grantor, executed a declaration of trust prepared by DSG entitled "Castro & Co. Jewelers".  The declaration of trust recited that the CFT had transferred the assets of the jewelry business to the CCJT in exchange for $10 and all 100 units of beneficial interest in the CCJT.

(5) On May 5, 1994, the Castros, as trustees of the CFT, executed a bill of sale purporting to sell the assets of the jewelry business to the CCJT for $10 and other consideration.

B.  The Operation of the Trusts

The declarations of trust with respect to the CFT and the CCJT provided in pertinent part as follows:

1.  The CFT

The CFT's declaration of trust described the function and purpose of the CFT:

> THE TRUSTEES purpose shall be authorized to accept rights, title and interest in and to real and personal properties, whether tangible or intangible, which have been conveyed by THE CREATOR HEREOF AND GRANTOR HERETO to be the CORPUS OF THIS TRUST.  Included therein is the exclusive use of HIS lifetime services and ALL of HIS EARNED REMUNERATION ACCRUING THEREFROM, from any current source whatsoever, so that Kevin D. Castro can maximize HIS lifetime efforts through the utilization of HIS Constitutional Rights; for the protection of HIS family in the pursuit of HIS happiness through HIS desire to promote the general welfare, all of which Kevin D. Castro feels HE will achieve because they are sustained by HIS RELIGIOUS BELIEFS.

The declaration of trust divided the beneficial interests in the trust into 100 units in certificate form.  The units were "non-assessable, non-taxable * * *, non-negotiable, non-transferable (except back to THE TRUST)".  The declaration of trust prohibited the trustees from issuing more than the initial 100 units of beneficial interest.  In consideration for petitioner's contribution of assets and his promise to render

lifetime services and any attendant remuneration to the CFT, petitioner received all 100 units of beneficial interest.

The CFT's declaration of trust conferred on its trustees broad authority to administer the trust. A majority of the trustees constituted a quorum, and a majority vote of all trustees was all that was required to authorize expenditures, including the payment of compensation to the trustees. The declaration of trust authorized the trustees to supplement the trust instrument; a majority of the trustees then in office and participating in the meeting needed only to adopt a resolution to effect the change. The declaration of trust also provided that "A Minute of Resolution of THE BOARD OF TRUSTEES authorizing what it is they determine to do or have done shall be evidence that such an act is within their power."

Under its declaration of trust, the CFT had a term of 25 years. The trustees, however, could liquidate the CFT by unanimous vote at any time "because of threatened depreciation in values, or other good and sufficient reason". Upon liquidation, the assets of the CFT were to be distributed pro rata to those persons having possession of the units of beneficial interest. During the CFT's existence, distribution of trust income was in the trustees' discretion.

The original trustees of the CFT were Mrs. Castro and Nelly Castro (Nelly), petitioner's mother. The declaration of trust

authorized the selection of a new trustee by unanimous vote of the remaining trustees.  One week after the CFT was created, petitioner was appointed a trustee.

On February 11, 1996, Nelly died.  On February 14, 1996, Steven Castro (Steven), petitioner's brother, replaced Nelly as trustee.

During the years at issue, only Mrs. Castro received a fiduciary fee from the CFT.

### 2.  The CCJT

The declaration of trust for the CCJT provides very little guidance concerning the function and purpose of the CCJT, even though it directs the trustees to regard it "as their principal guide".  The declaration of trust summarizes its "purport" as follows:

> THE PURPORT of This Instrument is to convey title to real & personal property to THE BOARD OF TRUSTEES to CONSTITUTE A TRUST for the Benefit of THE BENEFICIARIES, with such title held by THE TRUSTEES, IN-TRUST in joint tenancy, and as Fiduciaries, with instructions to maintain & preserve such property, for the duration hereof, AND to provide for an economical administration of THE TRUST'S CORPUS, including the effective management of TRUST BUSINESS, AND to make distributions of Income and/or Corpus to THE BENEFICIARIES on a pro-rata basis and in amounts determined within the discretionary powers of THE TRUSTEES.
>
> The nature and principle activity of THIS TRUST, is first and foremost to preserve and maintain assets. The conducting of business, including the holding of title to property, with the necessary management and control of such TRUST property, are such that there may be attempts by outside concerns, agencies,

professionals, & influences to classify THIS TRUST as a Business Trust.  Directions are hereby given to THE TRUSTEES to guard and resist such classification, through the sophisticated use of Minutes and Records.

The declaration of trust provides that the CCJT is irrevocable and may not be altered, revoked, or amended in any respect unless specifically authorized "by this direct instrument" and a unanimous vote of the trustees and further provides that it may not be terminated except through distributions permitted by the declaration of trust and approved by the unanimous vote of the trustees.  The declaration of trust further provides that the trust shall continue for 25 years unless the trustees unanimously decide to terminate it earlier or to extend the trust's term.

The declaration of trust confers "exclusive management and control of THE TRUST property and business affairs" on the trustees and requires that there be at least two trustees, although additional trustees may be named "for reasons beneficial to THE TRUST."  The trustees have the right to name successor trustees "by unanimous concurrence and vote".

The declaration of trust authorizes the trustees to exercise broad, general powers including, but not limited to, the following:

(1) The trustees may hold meetings.  A majority of the trustees constitutes a quorum for conducting business, "provided affirmative action may only be had upon a majority vote of the present TRUSTEES, whether present or absent."

(2) The trustees may fix and pay compensation to third parties and to themselves.

(3) The trustees, by unanimous vote, may amend, in whole or in part, the declaration of trust "to better carry out the purposes and intent thereof".

(4) The trustees may consent, unanimously and in writing, to the transfer of beneficial units in the trust even though the units were otherwise "non-assessable, non-taxable, non-negotiable, and non-transferable".

(5) The trustees may distribute income from the trust in their absolute discretion.

The Castros were the original trustees of the CCJT and remained trustees throughout the years at issue.[7]  During the years at issue, only petitioner received a fiduciary fee from the CCJT.

---

[7]The parties stipulated that Nelly was an original trustee of the CCJT and that, when she died in 1996, Steven replaced her as trustee.  That stipulation contradicts other evidence in the record which tends to show that the Castros were the only trustees of the CCJT.  For example, only the Castros signed the declaration of trust and are listed in the declaration of trust as trustees.  The Castros were the only people who attended the first meeting of the trustees and signed the minutes or signed the CCJT's tax returns.

Throughout the years at issue, the jewelry business operated at the same location and in the same manner as it had before its transfer to the CCJT, and petitioner continued to work as a jeweler for, and manager of, the jewelry business.

III. <u>Tax Returns</u>

A. <u>1995</u>

The CCJT filed a timely Form 1041, U.S. Income Tax Return for Estates and Trusts, for 1995. The CCJT reported income and expenses allocable to the jewelry business on Schedule C attached to its return and also claimed deductions for fiduciary fees, charitable contributions, and a distribution of the trust's net income to the CFT. The CCJT reported no taxable income and paid no taxes for 1995. In respondent's notice of deficiency to the CCJT, respondent disallowed all of the CCJT's deductions.

The CFT also filed a timely Form 1041 for 1995. The CFT reported income it received from the CCJT on Schedule E attached to its return. The CFT also claimed deductions for taxes, fiduciary fees, charitable contributions, and medical, utilities, automobile, and telephone expenses. The CFT reported no taxable income and paid no taxes for 1995. In respondent's notice of deficiency to the CFT, respondent disallowed all of the CFT's deductions.

Petitioner reported fiduciary fees he received from the CCJT, and Mrs. Castro reported fiduciary fees she received from

the CFT, as "other income" subject to self-employment tax on the Castros' jointly filed Form 1040 for 1995. In respondent's notice of deficiency to the Castros, respondent increased the Castros' income by the jewelry business' net profit and decreased the Castros' income by the fiduciary fees received.

B. 1996

The CCJT filed a timely Form 1041 for 1996. The CCJT reported income and expenses allocable to the jewelry business on Schedule C of its return and also claimed deductions for fiduciary fees and a distribution to the CFT of all but $197 of its net income. The CCJT paid income tax of $15 for 1996. In respondent's notice of deficiency to the CCJT, respondent disallowed all of the deductions and increased the jewelry business' net profit accordingly.

The CFT filed a timely Form 1041 for 1996. The CFT reported the income it received from the CCJT on Schedule E to its return. The CFT also claimed deductions for fiduciary fees, charitable contributions, and medical, utilities, automobile, meal, travel, and telephone expenses. The CFT paid income tax of $16 for 1996. In respondent's notice of deficiency to the CFT, respondent disallowed all of the CFT's deductions.

Petitioner reported the fiduciary fees he received from the CCJT, and Mrs. Castro reported the fiduciary fees she received from the CFT, as "other income" subject to self-employment tax on

the Castros' jointly filed Form 1040 for 1996.[8]  In respondent's

notice of deficiency to the Castros, respondent increased their

income by the jewelry business' adjusted net profit and decreased

their income by the fiduciary fees received.

OPINION

## I.  Burden of Proof

Petitioners contend that petitioner's testimony was

uncontroverted and credible and that, pursuant to section 7491,

the burden of proof has shifted to respondent.  Respondent

contends that the only issue for decision is which petitioner is

properly taxable on the net income generated by the jewelry

business and that petitioners have the burden of proof on that

issue.

Generally, the burden of proof is on the taxpayer to show

that the Commissioner's determinations are erroneous.  See Rule

142(a).  The Internal Revenue Service Restructuring & Reform Act

of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 685, 726, however,

added section 7491, which is applicable to court proceedings

arising in connection with examinations commenced after July 22,

1998.  Under section 7491(a)(1), the burden of proof shifts to

---

[8]Although the parties stipulated that the Castros' tax
return for 1996 was in evidence, the exhibit attached to the
stipulation of facts was a copy of the Castros' 1995 return.  Our
factual findings regarding the Castros' 1996 returns are based on
respondent's notice of deficiency and the Castros' 1995 tax
return.

the Commissioner, subject to certain limitations, where a taxpayer introduces credible evidence with respect to factual issues relevant to ascertaining that taxpayer's tax liability. See Ashley v. Commissioner, T.C. Memo. 2000-376.

The record contains very little evidence regarding the commencement date of the examination in this case. Respondent's notices of deficiency to each of the trusts included a form prepared by the examining agent entitled "Income Tax Examination Changes", dated August 27, 1998, which supports a finding that the examination began sometime before that date. Testimony elicited by petitioners supports an inference that the examination in question began before July 1998. Petitioner testified that he met his current tax adviser, Kevin Allison, in early 1997. Mr. Allison testified that he and the Castros met approximately 6 months before petitioners' audit began. This testimony, while vague, suggests that the instant examinations commenced before July 22, 1998.

In contrast to the evidence described above, there is nothing in the record that allows us to conclude that the examination in these cases commenced after July 22, 1998. Petitioners have failed to convince us that section 7491 applies to shift the burden of proof to respondent. We hold, therefore, that the burden of proof is upon petitioners to prove respondent's determinations are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

II.  Lack of Economic Substance

Respondent's primary argument in support of his position that the trusts should be disregarded for income tax purposes is that the trusts lack economic substance.  Respondent alternatively argues that the jewelry business' income is allocable to the Castros under the assignment of income doctrine or under the grantor trust rules of sections 671 through 679.  Petitioners dispute each of respondent's arguments in turn and, with respect to respondent's primary argument, contend that the trusts are valid under State law, that tax was not a consideration in creating the trusts, and that respondent's interpretation of the law is too narrow to permit any restructuring of a business.

Taxpayers have a legal right, by whatever means allowable under the law, to structure their transactions to minimize their tax obligations.  See Gregory v. Helvering, 293 U.S. 465, 469 (1935).  Transactions, however, that have no significant purpose other than to avoid tax and do not reflect economic reality will not be recognized for Federal income tax purposes.  See Zmuda v. Commissioner, 79 T.C. 714, 719 (1982), affd. 731 F.2d 1417 (9th Cir. 1984).  We have held that, if a transaction has not altered any cognizable economic relationships, we must look beyond the form of the transaction and apply the tax law according to the transaction's substance.  See Markosian v. Commissioner, 73 T.C. 1235, 1241 (1980).  This principle applies regardless of whether

the transaction creates an entity with separate existence under State law.  See Zmuda v. Commissioner, supra at 720.

We have decided several cases involving multitiered trust arrangements where the Commissioner alleged that the trust structure lacked economic substance and, therefore, had to be disregarded for Federal income tax purposes.  See, e.g., Muhich v. Commissioner, T.C. Memo. 1999-192, affd. 238 F.3d 860 (7th Cir. 2001); Dahlstrom v. Commissioner, T.C. Memo. 1991-264, affd. without published opinion 999 F.2d 1579 (5th Cir. 1993); Clawson v. Commissioner, T.C. Memo. 1982-321.  In deciding whether a purported trust lacks economic substance, we consider the following factors:  (1) Whether the taxpayer's relationship, as grantor, to property purportedly transferred into trust differed materially before and after the trust's formation; (2) whether the trust had a bona fide independent trustee; (3) whether an economic interest in the trust passed to trust beneficiaries other than the grantor; and (4) whether the taxpayer honored restrictions imposed by the trust or by the law of trusts.  See Markosian v. Commissioner, supra at 1243-1245.

A.  The Castros' Relationship to the Trusts' Property

The first factor we consider is whether petitioner's relationship, as grantor, to property ostensibly transferred into trust differed materially before and after the trusts' formation. See id. at 1243.

The Castros lived in the same home with the same furnishings as they had before their home and furnishings were transferred

- 18 -

into trust.  They did not rent or lease the home or furnishings from the CFT.  Their relationship to these assets did not differ materially before and after the formation of the CFT.

The jewelry business was operated in much the same manner both before and after the CCJT was created.  The jewelry business and its attendant activities continued under the same name, in the same office space, and with the same equipment.  Petitioner continued to make the daily operating decisions and to manage the jewelry business, including overseeing employees, jewelry repair and design, and sales.[9]  Petitioner argued that business changes--more employee training with weekly meetings and feedback sessions--were implemented after the CCJT was created, thereby changing petitioners' relationship to the property.  We disagree.  The identified changes may have had the effect of improving the effectiveness of employees, but they had no material impact on the nature and structure of the business.

The Castros' use of the trust property before and after the transfers was not materially different.  This factor weighs against petitioners.  See id. at 1243-1244; Muhich v. Commissioner, supra; Buckmaster v. Commissioner, T.C. Memo. 1997-236; Hanson v. Commissioner, T.C. Memo. 1981-675, affd. 696 F.2d 1232 (9th Cir. 1983).

B.  Independent Trustee

The second factor we consider in determining whether a trust

[9]Mrs. Castro also continued to provide bookkeeping services and customer service just as she had before the CCJT was created.

has economic substance is whether the trust had a bona fide independent trustee.  See Markosian v. Commissioner, supra at 1244.  Petitioners contend that Howie Rossman, the drafter of the CCJT documents, was an independent trustee who participated in the daily operations of the jewelry business after the CCJT was created.  Petitioners also contend that Nelly and Steven[10] acted at different times as independent trustees of both trusts.

The declarations of trust provided that the trustees, by majority vote, could supplement and amend the terms of the declarations.  The trustees were authorized to distribute trust income and principal in their absolute discretion, determine compensation for employees and themselves without any apparent restriction, remove other trustees from office, or generally perform almost any legal action with respect to the trusts.  During the years at issue, the Castros exercised effective control over the trusts, either as the only trustees or as a majority of the trustees of the two trusts.  Howie Rossman was not a trustee of either trust during the years at issue.  The record is lacking in credible evidence that either Nelly or Steven functioned as an independent trustee, particularly since the Castros could and did control significant trust decisions.  Nelly and Steven's service as trustee was merely a formality that

---

[10]Petitioners do not expressly argue that Steven was an independent trustee for purposes of meeting the second factor, but because he replaced Nelly as trustee to the CFT when she died, we assume petitioners intended this as part of their argument.

did nothing to alter the substance of the Castros' relationship to the jewelry business or to the other trust assets.

Under the terms of the declarations of trust, a majority of the trustees controlled many trust decisions, and the Castros constituted a majority of the trustees. As a result, no independent trustee could wrest control over trust property from the Castros or prevent the Castros from using the trust property for their own purposes. See Buckmaster v. Commissioner, supra. The Castros had the ability to fully control the trusts' activities for their own benefit because no independent trustee had any meaningful control over the management of either trust. This is evidence that the trusts lacked economic substance. See Zmuda v. Commissioner, 79 T.C. at 720-721; Lund v. Commissioner, T.C. Memo. 2000-334. This factor weighs against petitioners.

C. Economic Interests

The third factor we consider is whether a genuine economic interest in the trusts passed to anyone other than the Castros. See Markosian v. Commissioner, 73 T.C. at 1244. Petitioner asserted at trial that the Castros' children, the Castro Holding Co., and Good Samaritan, a private charitable trust, were the CFT's beneficiaries. Petitioners asserted on brief that all 100 units of beneficial interest in the CFT originally issued to petitioner were later canceled by the CFT and ultimately reissued to other parties.

The objective evidence does not show that anyone other than petitioner held any meaningful economic interest in either trust.

Petitioners never introduced the CFT certificates of beneficial interest or any minutes of trustee meetings purporting to show that certificates were issued to parties other than petitioner or, even more importantly, to show the identity of the person or persons who had possession of the certificates.[11]  We are not required to accept petitioner's self-serving testimony as evidence, particularly in the absence of corroborating evidence, and we decline to do so in this case.  See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Peterman v. Commissioner, T.C. Memo. 1993-129.  Statements in a brief that are not supported by testimony or documents introduced at trial are not evidence.  See Rule 143(b); Niedringhaus v. Commissioner, 99 T.C. 202, 214 n.7 (1992); Viehweg v. Commissioner, 90 T.C. 1248, 1255 (1988).

Even if the Castros' children, the Castro Holding Co., and Good Samaritan held beneficial interests in the CFT, as petitioners contend, petitioners failed to prove that any genuine economic interest passed to them.  The trustees had absolute discretion to distribute principal and interest at any time and in any way they saw fit.  The trustees could modify the declarations of trust and could even decide to terminate the trusts early or to extend the trusts beyond the specified term. See Markosian v. Commissioner, supra at 1244.

---

[11]According to the CFT's declaration of trust, the certificates of beneficial interest are owned by the person who is in possession of them.

The absolute and unbridled discretion conferred on the Castros as trustees is confirmed by language in the CFT's declaration of trust, which provided that "A Minute of Resolutions of THE BOARD of TRUSTEES authorizing what it is they determine to do or have done shall be evidence that such an act is within their power."  We have held on numerous occasions that such unbridled power gives taxpayer-trustees the same control over the property as they enjoyed before the formation of the trust.  See, e.g., id. at 1241, 1244; Cooper v. Commissioner, T.C. Memo. 1981-369; Palmer v. Commissioner, T.C. Memo. 1981-354.

Our analysis is supported by the inherent implausibility of petitioners' position.  It defies common sense that petitioner would grant the exclusive use of his lifetime services to the CFT for no remuneration and make an anticipatory transfer of any and all future earnings to the CFT.  It defies common sense that the Castros would transfer practically all of their assets, including their home, furnishings, and business, to the trusts for practically nothing in return while retaining no control over the assets.  See Buckmaster v. Commissioner, T.C. Memo. 1997-236.

The Castros had the power to allocate all trust principal and income to themselves in derogation of any other beneficiaries.  The record fails to show that anyone other than petitioner held units of beneficial interest in the trusts during the years at issue.  On these facts, we conclude that petitioners have failed to prove that any economic interest passed to any

other beneficiaries.  See <u>Markosian v. Commissioner</u>, <u>supra</u> at 1244.  This factor weighs against petitioners.

D.  <u>Restrictions Imposed by the Trusts or by the Law of Trusts</u>

The fourth factor we consider is whether the Castros honored restrictions imposed by the trusts or by the law of trusts.  See <u>id.</u> at 1244.  The Castros contend that tax avoidance was not their primary motivation and that they felt a fiduciary duty to the trusts and the beneficiaries.  We disagree.

The Castros' unrestricted use of the assets transferred to the CFT and the CCJT for nominal, if any, consideration indicates that the Castros, as trustees, were not restricted in any economically substantive way.  See <u>Buckmaster v. Commissioner</u>, <u>supra</u>; <u>Hanson v. Commissioner</u>, T.C. Memo. 1981-675.  Moreover, the authority granted to the Castros as trustees of the trusts was so broad that very few restrictions, if any, were actually imposed on the Castros by the trust structure.  This factor weighs against petitioners.

E.  <u>Conclusion</u>

Petitioner testified at trial that the Castros intended to limit their liability, protect their assets from creditors, avoid probate, and ensure their financial privacy by creating the trust structure and denied that tax factors had <u>any</u> impact on their decision.  This testimony was not credible, particularly when the declarations of trust and the facts and circumstances surrounding the establishment of the trusts are considered, and we do not

accept it.  See <u>Tokarski v. Commissioner</u>, <u>supra</u> at 77; <u>Peterman v. Commissioner</u>, <u>supra</u>.

After considering the four factors articulated in <u>Markosian v. Commissioner</u>, 73 T.C. at 1243-1244, we have no doubt that the trusts in question lacked economic substance and must be disregarded for Federal income tax purposes.  See also <u>George v. Commissioner</u>, T.C. Memo. 1999-381.  We hold for respondent on this issue.[12]  Because the parties agree that, if we disregard the trusts for Federal income tax purposes, the net income from the jewelry business is taxable to petitioner and not to the trusts, we hold accordingly.

III.  <u>Self-Employment Tax</u>

Respondent contends that the net income from the jewelry business qualifies as net earnings derived by petitioner from the jewelry business that he carried on during the years at issue and that, therefore, petitioner is liable for self-employment taxes on that income.  See sec. 1401.  The Castros disagree, arguing only that the jewelry business was carried on by the CCJT and not by petitioner.  The Castros asserted no argument with respect to the net earnings of the jewelry business in the event we held that the trusts should be disregarded for Federal income tax purposes.

---

[12]In light of our holding, we need not address respondent's alternative arguments that the jewelry business' income should be allocated to the Castros under the doctrine of assignment of income or the grantor trust rules.

Before the establishment of the CCJT, petitioner reported the net income he derived from the jewelry business as net earnings from his trade or business, and petitioner paid self-employment taxes on it. The Castros do not dispute that petitioner continued to work in the jewelry business after the CCJT was established.

Section 1401 imposes a tax on the self-employment income of every individual for old age, survivors, and disability insurance, and hospital insurance. See sec. 1401(a) and (b); George v. Commissioner, supra; sec. 1.1401-1(a), Income Tax Regs. Self-employment income "means the net earnings from self-employment derived by an individual". Sec. 1402(b). Net earnings from self-employment "means the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business". Sec. 1402(a); see also sec. 1.1402(a)-1, Income Tax Regs.

The Castros have offered no reason other than their belief that the CCJT owned the jewelry business to explain why the net income from the jewelry business is not self-employment income to petitioner. Since we have concluded that the CCJT must be disregarded for Federal income tax purposes, it follows that the net income of the jewelry business represents petitioner's net earnings from self-employment and that petitioner is liable for self-employment taxes on that income for the years at issue. We so hold.

IV.  Section 6662 Accuracy-Related Penalty

Section 6662(a) and (b)(1) authorizes a 20-percent penalty to be imposed on the portion of an underpayment of income tax attributable to negligence or disregard of rules or regulations. Respondent's determination is presumed correct, and petitioners have the burden of proving otherwise.[13]  See Rule 142(a); Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337; Neely v. Commissioner, 85 T.C. 934, 947 (1985); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972).

Negligence "includes any failure to make a reasonable attempt to comply with the provisions of * * * [the Internal Revenue Code]".  Sec. 6662(c); see also Neely v. Commissioner, supra at 947 (negligence is lack of due care or failure to do what a reasonable and prudent person would do under the circumstances).

We previously have held that a taxpayer's adoption of a "flagrant tax avoidance scheme" repeatedly rejected by the courts is patently negligent.  Wesenberg v. Commissioner, 69 T.C. 1005, 1015 (1978); see also Hanson v. Commissioner, supra.  In 1994, when the Castros established the two trusts, we already had decided several abusive trust cases.  In each case, we emphasized that trusts, to be recognized for Federal income tax purposes, must be infused with economic reality.  See, e.g., Hanson v.

_____

[13]Sec. 7491(c), which provides that the Secretary shall have the burden of production in any court proceeding with respect to an individual's liability for a penalty, does not apply in this case.

Commissioner, 696 F.2d at 1234 ("No reasonable person would have trusted this scheme to work.").

Petitioners argue that the penalty may not be imposed with respect to any portion of the underpayments because there was reasonable cause for the underpayments and they acted in good faith with respect to the underpayments.  See sec. 6664(c)(1). In determining whether a taxpayer acted in good faith, we look at such factors as the taxpayer's knowledge and experience, the taxpayer's reliance, if any, on the advice of well-informed and competent professionals, and the taxpayer's efforts to assess his proper tax liability.  See Stubblefield v. Commissioner, T.C. Memo. 1996-537; sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners introduced no evidence of the Castros' knowledge or experience in financial and tax matters or of the knowledge and experience of any professionals with whom they may have consulted to complete their income tax returns for the years at issue.  Petitioners argue only that they maintained complete and accurate books and records and that the CCJT reported the jewelry business' income.

We reject petitioners' arguments.  A taxpayer's effort to ascertain his correct tax liability is the most important factor in deciding whether a taxpayer acted in good faith within the meaning of sections 6662 and 6664(c)(1).  Petitioners have offered no evidence other than petitioner's testimony in support of their argument that they are not liable for the accuracy-related penalties.  That testimony offers no insight into the

effort made by the Castros and any advisers with whom they may have consulted to ascertain whether the trust structure at issue in these consolidated cases would be respected for Federal income tax purposes. Absent such proof, we cannot relieve petitioners of liability for the accuracy-related penalties under section 6662(a) and (b)(1). See Neely v. United States, 775 F.2d 1092, 1095 (9th Cir. 1985); George v. Commissioner, T.C. Memo. 1999-381; Hanson v. Commissioner, T.C. Memo. 1981-675; sec. 1.6664-4(b)(1), Income Tax Regs. We sustain respondent's determination that petitioners are liable for accuracy-related penalties pursuant to section 6662(a) for 1995 and 1996 on any underpayment of income tax that may be due as a result of this opinion.

## V.    Section 6673 Penalty

Section 6673(a)(1)(A) and (B) provides that this Court may impose a penalty of up to $25,000 whenever proceedings have been instituted or maintained by the taxpayer primarily for delay, or whenever the taxpayer's position in a proceeding is frivolous or groundless. Before trial, respondent warned the Castros that respondent intended to move for a penalty under section 6673 and gave the Castros copies of cases supporting respondent's contention that their arguments lacked merit.

We are satisfied that the Castros did not institute or maintain these proceedings primarily for delay. The Castros' belief that their trust structure should be respected for Federal income tax purposes was sincere if uninformed by any reasonable analysis of pertinent authority. In addition, there is no

evidence in the record to suggest that the Castros unreasonably delayed the proceedings.

We are not satisfied with the Castros' position regarding the validity of the trusts for Federal income tax purposes, however. Their position was frivolous, and our conclusion in this regard satisfies the statutory predicate for imposing a penalty under section 6673. But section 6673 grants the Court discretion in deciding whether to impose a penalty. See sec. 6673; Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 102 (2000). Exercising our discretion, we decline to impose a penalty under section 6673 in these cases. Our decision on this issue is based on several factors. Petitioner testified he cooperated during the examination of the relevant tax returns conducted by respondent's agents and that he maintained records of the jewelry business' income and expenses during the years at issue. The record supports a conclusion that the Castros attempted to abide by the terms of the declarations of trust and that they maintained records regarding the trusts. In addition, there is no evidence to indicate that the Castros manipulated income or exaggerated expenses with respect to the jewelry business or that they engaged in any other transactions structured to unreasonably reduce or eliminate their proper income tax liability. Consequently, we decline to impose a penalty under section 6673 upon the Castros. We caution the Castros and their counsel, however, that if they present similar arguments to this Court again, they invite the imposition of such

penalties upon themselves.  See sec. 6673(a)(1) and (2); Rule 33(b); <u>Leach v. Commissioner</u>, T.C. Memo. 1993-215.

VI.  <u>Conclusion</u>

We have carefully considered all remaining arguments made by the parties for contrary holdings and, to the extent not discussed, find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155.</u>